```
ANTHONY R FLORES, SBN 130968
THE FLORES FIRM
2642 Gough Street, #305
San Francisco, CA 94123
(415) 235-3652
Attorney for Debtor, ANDREW LINTON
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Andrew Linton,<br><br>        Alleged Debtor. | **Case No. 18−30773 HLB**<br><br>Chapter 7 (Involuntary, Petitions Dismissed)<br><br>**ALLEGED DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROM STAY**<br><br>DATE:      April 30, 2020<br>TIME:      1:00 PM<br>JUDGE:    Hon. Hannah L. Blumenstiel<br>LOCATION: Courtroom 19, 16th Floor<br>                  450 Golden Gate Avenue<br>                  San Francisco, CA 94102 |

**I.      INTRODUCTION**

    LINTON opposes the Motion of 1429 Grant Avenue LLC to have the Automatic Stay lifted in this case because:

1. It is Premature in that the Motion should be heard after the conclusion of the main case, just as the court has consistently advised the parties. LINTON's Motion for Finding of Joint Liability showing that 1429 Grant Avenue LLC and Jeries Azar are

one and the same party as Colpo Talpa LLC. The court should retain jurisdiction over this matter until resolution of LINTON's Motion for Finding of Joint Liability, which will be filed later today and set for hearing ASAP on June 4, 2020.

2. It is Contrary to the rationale provided in its removal papers and in court during the hearing on March 21, 2019.

3. Lifting the Stay will unjustly reward 1429 Grant Avenue LLC with another opportunity to gain advantage by forum shopping the case. In these circumstances, it is hard to imagine how Relief from the Stay is not tantamount to forum shopping. Allowing Relief would sanction a violation of public policy, and in this case, it would sanction fraud.

## II. LEGAL ARGUMENT

### A. Procedural Deficiencies.

**1. The Motion for Relief from Stay is premature.** As mentioned above, the issue of remanding the adversary proceeding had been discussed more than once in the context of forward-looking case status conferences. The issue has always been raised by 1429's counsel whenever the court suggested that it might dismiss the adversary proceeding, presumably without prejudice. In response, Linton's counsel has always indicated to the court that he intends to request that the adversary proceeding be dismissed with prejudice as a Rule 11 sanction against CT, 1429 Grant, and their owners. Each time, the court acknowledged such a request and invited Linton's motion to that effect. But the court always indicated that such a motion would not be proper until the end of the main case because the adversary proceeding was trailing the main case and would not be dealt with until then.

For this reason, 1429's Motion for Relief from Stay is premature, and it should be denied or at least continued until the court has ruled on Linton's Motion for a Finding of Joint Liability which will be set for hearing on June 4, 2020. This would also allow Linton to argue for sanctions of a dismissal with prejudice simultaneously.

B. **Substantive Deficiencies**

1. **Movant argued that this court was uniquely situated to resolve two major issues in the eviction case.**

In its Notice of Removal 1429 availed itself of the court's "continuing jurisdiction" over the Bannam Place settlement that gave the property back to Coyle's estate from which AZAR purchased it and jurisdiction over the Sigal settlement which 1429 claimed to be a successor of the Trustee. (Adversary No. 18-03066 HLB, Dkt.# 15 ¶¶ 9-13)

Movant also averred in the Jurisdiction section of the Notice of Removal

> **"JURISDICTION**
> 14. The State Court Action is subject to removal to this Court as a case arising under or related to a pending bankruptcy case in this Court under 28 UCS §§ 157(b), 1334(a) and (b) and 1452 and Bankruptcy Rule 9027, for the following reasons:
> (a) The Bankruptcy Court has sole jurisdiction over claims against the Debtor under 28 U.S.C. §157(b)(2)(B).
>
> (b) The Bankruptcy Court has jurisdiction over determining the nature and extent of property of the estate and its use and recovery under 28 U.S.C. §157(b)(1)(2)(A) and 157(b)(2)(M) and (O).
>
> ( c) The Bankruptcy Court has sole jurisdiction over this case because the claims and counter claims of the parties pertain to the Settlement, and the Settlement reserved "continuing jurisdiction" in this Court. Plaintiff is a privity of the Trustee and entitled to orders of this Court, interpreting and enforcing its own orders and judgements.
>
> (d) The Bankruptcy Court has jurisdiction over these claims because under the Linton Stipulation, Plaintiff is a privity and successor of the Trustee, and entitled to this Court interpreting and enforcing its own orders and judgements.
> ( e) The Bankruptcy Court has sole jurisdiction under 28 U.S.C. 157(b) over these claims under 28 U.S.C. §157(b)(1)(2)(A)(B) and ( C) and 11 U.S.C. § 549 to determine the validity of the 2015 Lease and the 2016 Lease as invalid post petition transfers in the Coyle
> Case.
> (f) The State Court Action is further related to the Coyle Case by virtue of the above orders and judgements of the court as to the sale, the Settlement and the Linton
> Stipulation."

It is incongruous for 1429 to now abandon the sole jurisdiction of this court by lifting the Stay.

**2. Relief from the Stay constitutes further forum shopping which should not be allowed.**

When 1429's state court action against Linton was stayed by LOUISA TRIFILETTI'S ("LT's") involuntary petition against Linton, 1429 had several options regarding how to proceed if it wanted to continue is case against Linton.

- a. 1429 could have continued in state court by seeking relief from the bankruptcy stay. It is not clear what grounds it could use to get such relief,
- b. 1429 could have waited until the bankruptcy case resolved itself through LT's abandonment or Linton's steps to rid himself of the unwanted case, which might only involve a wait of a few months, or
- c. As it actually did, 1429 could remove its state court dispute to the bankruptcy court as an adversary proceeding. This was obviously the riskiest option of the three.

Surely, 1429 thought it had reduced its risk by waiting until it appeared that Linton was in default before creating CT, buying the judgment, and having CT become a petitioner. Unfortunately for 1429, CT, and their members/owners, they relied on an expired summons and defective service. In so doing, these parties carried out aggressive prosecution of the case. CT and its counsel set Linton's Rule 2004 Examination and tried to file financials on Linton's behalf. CT ultimately obtained a default judgment against Linton.

At this point, 1429 apparently felt that it could safely swoop in with its removed adversary proceeding. 1429 filed its Motion for Summary Judgement and expected to easily prevail over a defaulted debtor. To 1429's chagrin, at this point, Linton realized what was going on and he successfully set aside the default. He also got the Motion for Summary Judgment stayed.

Eventually, Linton was able to have both petitions dismissed and ultimately the court found that CT and 1429 had worked together with common ownership in Mr. Azar

and common representation by Mr. Romeo. This led to the court's finding that CT filed its petition in bad faith.

The court has already determined that a litigation advantage in the adversary proceeding was the goal of CT's bad faith filing. (Order Granting In Part And Denying In Part Alleged Debtor's Motion For Reconsideration (Dkt. #94) p.6, lines 14-17 (the "Order").)

LINTON's Motion for Finding of Joint Liability demonstrates that parties in the adversary proceeding shared an identity of interests with CT and it was all part of one bad faith scheme to take advantage of LINTON.

**3. Despite numerous clear opportunities to withdraw from the main case and terminate the adversary proceeding, 1429 Grant/CT fought LINTON at every turn.**

Despite obvious problems with their scheme that should have been clear once LINTON set aside the default order, and despite the tremendous downside if the court was to discover the bad faith nature of the involuntary bankruptcy petition, the Conspirators pressed forward with their deception of this court and LINTON. Instead of abandoning the Petition, allowing this case to be dismissed and stay lifted for the proceeding back in SF Superior Court, the Conspirators obtained an alias summons, served it on LINTON, and fought this case tooth and nail. There were several distinct inflection points where the Conspirators must have considered abandoning the case and the deception, but did not:

1. When LINTON filed his Motion to Set Aside the Order of Default – The Motion made clear that the summons at the foundation of this case was stale when served. At this point, the Conspirators must have known that they would have to start all over and that LINTON was going to fight back. They should have known that their plot was at risk of being found out. Given the significant downside, they should have allowed the involuntary bankruptcy to be dismissed and then proceeded in state court against LINTON.

2. When the court granted LINTON's Motion to Set Aside the Order of Default – At this point, there is no doubt about having to start over and the risk of their deception being discovered by LINTON or the court as he fought back. Still, the Conspirators pressed on.

3. When LINTON filed his Motion to Dismiss – In the unlikely event that the Conspirators did not know that their scheme violated Rule 1003 before this, they certainly should have known once they saw the Motion. They also knew that they were hiding the big secret of CT's true identity. They still went on to oppose the Motion rather than concede and proceed in state court.

4. When CT requested permission to file something other than the statement of compliance with Rule 1003 – The Conspirators knew that they could not truthfully comply with the court's demand and that as a result, the Petition would be dismissed, exposing them to LINTON's costs and attorney fees. The Conspirators might have been able to keep CT's identity secret from LINTON and the court if they had folded their tent any time before this.

5. When the court granted LINTON's Motion to Dismiss the Petition – It was in connection with these hearings that the Conspirators' counsel admitted that Mr. AZAR was the owner of CT. This is what opened up the bad faith discovery, and ultimately the court's finding that CT acted in bad faith to gain a litigation advantage for 1429 by filing the involuntary bankruptcy petition against LINTON.

After this point, even if the Conspirators had folded, LINTON was going to pursue a finding of bad faith, of which this Motion is a part. Nonetheless, the Conspirators would have saved LINTON's costs of discovery and attorney fees, for which they will ultimately be responsible if they had cooperated rather than opposed all of LINTON's efforts since then.

Surely the Conspirators were confident that they could do better in the specialized bankruptcy court than they could in state court. There was only the slightest downside risk

in keeping LINTON in involuntary bankruptcy. Since he had already defaulted, LINTON appeared to be a defenseless debtor-defendant. The Conspirators had already run LINTON through a year and a half of scorched earth litigation in state court. LINTON was impecunious and unrepresented, so he was unlikely to obtain counsel or mount much of a defense, if any. Access to counsel was extraordinarily unlikely due to the specialized nature of bankruptcy practice and its concomitant lofty attorney fees. Once they got the Default Order, it must have looked like a slam dunk win to the Conspirators.

At the same time, the upside for the Conspirators was tremendous. It is well understood in San Francisco real estate circles that a vacant residential unit can add at least $500,000 in present value to the owner of a building. With the potential for at least three (3) residential units at 1427-1431 Grant Avenue, the Conspirators stood to gain $1.5 million to $2 million if they could invalidate LINTON's lease or otherwise evict him. The Conspirators were also likely to save another $250,000 in avoided relocation costs and reduced construction costs if the building was vacant. The plan to evict LINTON allowed AZAR to bid more for the building than anyone else. But he and the other Conspirators had to get LINTON out of the building for it all to pay off.

The Conspirators must have perceived the combination of a multi-million dollar upside and minimal downside in the bankruptcy court as a significant litigation advantage over a proceeding in state court because the Conspirators kept doubling down after every adverse ruling that came their way when LINTON began fighting back. With experienced bankruptcy counsel, the Conspirators must have realized the potential for things to go terribly if their Petition was dismissed. One would think that they would be very motivated to keep their fraudulent concealment scheme from being exposed.

Even though the Conspirators had many opportunities to allow dismissal of the involuntary bankruptcy case to resume the adversary proceeding in state court quickly, they chose not to cut their losses and protect their fraud. Instead, they tried to keep the involuntary bankruptcy case alive, forcing LINTON to defend himself and pursue them as they continued.

-7-
Case: 18-30773    Doc# 109    Filed: 04/30/20    Entered: 04/30/20 12:20:57    Page 7 of 10

The point is that the upside must be quite lucrative for the Conspirators to carry on as they did even once they realized that LINTON was no longer a pushover. That is why it would be a grave injustice for the Conspirators to be allowed to restart the case against Linton without consequence, especially if the court finds the parties all jointly liable for CT's bad faith petition.

### III. CONCLUSION

This court should not allow this further forum shopping and should not reward the bad faith scheme perpetrated by 1429, CT and their member/owners.

The Motion for Relief from Stay should be denied, or at least continued to be decided after the June 4, 2020 hearing of LINTON's Motion for Finding of Joint Liability.

Respectfully submitted,

Dated: April 30, 2020
THE FLORES FIRM

By: */s/ Anthony Flores*
Anthony Flores
Attorney for Debtor, ANDREW LINTON

```
 1  ANTHONY R FLORES, SBN 130968
    THE FLORES FIRM
 2  2642 Gough Street, #305
    San Francisco, CA 94123
 3  (415) 235-3652
    Attorney for Debtor, ANDREW LINTON
 4
 5
 6
 7
 8              UNITED STATES BANKRUPTCY COURT
 9              NORTHERN DISTRICT OF CALIFORNIA
10
11  In re: Andrew Linton,              Case No. 18−30773 HLB
12          Debtor.                    Chapter 11 (Involuntary, Petitions Dismissed)
13                                     Adversary Proc. No. 18-03066
14  1429 GRANT AVENUE, LLC,            CERTIFICATE OF SERVICE
15          Plaintiff,                 DATE:     March 5, 2020
                                       TIME:     2:00 PM
16      v.                             JUDGE:    Hon. Hannah L. Blumenstiel
                                       LOCATION: Courtroom 19, 16th Floor
17  ANDREW LINTON,                               450 Golden Gate Avenue
                                                 San Francisco, CA 94102
18          Defendant.
```

# CERTIFICATE OF SERVICE

I reside in the County of San Francisco, State of California. I am not a party to the within action. My address is 2642 Gough Street, #305, San Francisco, CA 94123. I hereby certify that on the date stated below I served each party as described below, by transmitting all of the following documents addressed to each as indicated:

- **DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF FROM STAY**

☐ **BY MAIL:** I personally deposited the foregoing such that it was sealed and deposited in the U.S. Postal Service mail with postage thereon fully prepaid and duly affixed this same day at San Francisco, California in the ordinary course of business.

● **BY E-FILING OR CM/ECF SERVICE:** The document(s) were electronically filed with the court and were served on the parties who are registered e-Filing or CM/ECF participants for this case through the court's e-Filing or CM/ECF service and notification system.

☐ **BY EMAIL:** I transmitted during normal business hours electronic .PDF versions of the foregoing via a properly operating and reliable email service and further verified via review of the email inbox that the delivery of all pages of the foregoing was not returned undeliverable and therefore successfully transmitted.

☐ **BY EXPRESS MAIL/OVERNIGHT DELIVERY:** I deposited the foregoing during normal business hours with an authorized service providing and ensuring overnight delivery of the foregoing and with the full postage or charges for such fully prepaid, strictly complying in all respects with CCP Section 1013(c) and (d).

☐ **BY PERSONAL SERVICE:** I hand-delivered the foregoing to the person(s) designated.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this is executed and transmitted on April 30, 2020.

Signed: _/s/ Anthony R. Flores_
Anthony R. Flores

Recipients via CM/ECF:
Counsel for 1429 Grant Avenue, LLC
Richard A. Lapping, Esq.
Trodella & Lapping LLP
rich@trodellalapping.com

Mark J. Romeo, Esq.
Law Offices of Mark J. Romeo
romeolaw@msn.com